UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| VIRGINIA MATHIE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 08 C 4080 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| HARRIS BANK N.A. and HARRIS EMPLOYMENT TRANSITION POLICY, PLAN # 510, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Virginia Mathie ("Mathie") filed a claim against defendant Harris Bank N.A. and Harris Employment Transition Policy Plan # 510 (the "Plan") seeking benefits under the Plan pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The Plan moves for summary judgment.[1] For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.    Background**

The following facts are undisputed unless otherwise noted.[2]

---

[1] Plaintiff has already voluntarily dismissed without prejudice defendant Harris N.A.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004).

Harris N.A. sponsors the Plan. The Plan states, in relevant part:

PURPOSE: \* \* \* Employment transitions are based on management's need to make changes to positions for business purposes. These organizational changes may include but are not limited to physical relocation or elimination of a position. \* \* \*

DEFINITIONS: \* \* \*

**Comparable Job:** A position that is:

* Within one grade level (up or down) of current position
* Within the same shift
* Within the same employment status based on hours of work without affecting benefit status (i.e., part-time or full-time)
* Within 35-mile radius of current work location

\* \* \*

**Eligibility:** Any employee with a performance rating of "*does not meet requirements*" or "*below quality*" on his/her last review or who is in the Written Warning, Probation or Immediate Probation stage of corrective action is ***not*** eligible to participate under the *Employment Transition Policy*.

\* \* \*

**Official Notification Date:** Notification by an employee's manager to the employee at least twelve weeks prior to the actual job transition date.

\* \* \*

**Severance:** Payment provided to those eligible employees whose employment ends due to organizational change. Severance is calculated using an employee's rehire date *not* original hire date and is based on an employee's full or part-time status as of the official notification date. The maximum severance payout is not to exceed a total of 104 weeks.

| | |
|---|---|
| KEY POINTS: | **A.** An employee who does not meet the eligibility requirements of the *Employment Transition Policy* will be terminated from the Bank *without* severance benefits as of the official notification date. |
| | **B.** Employees eligible for participation under the *Employment Transition Policy* will be given a minimum of twelve weeks (job search period) to find an internal position. If Employee Relations and the manager agree that no opportunities exist for an internal job search, the employee will receive severance benefits on the next regularly scheduled payday following their completion date. |
| | \*     \*     \* |
| | **E.  During the Job Search Period** |
| | \* If an employee accepts another job within the Bank during the job search period, the employee will *not* be eligible for severance benefits. |
| | \*     \*     \* |
| | **F.  At the End of the Job Search Period** |
| | \* If a comparable job within the Bank has been offered but rejected by the employee and the employee still remains without a job at the end of the job search period, he/she will be terminated *without* severance benefits. |
| | \* If an employee has *not* been offered a comparable job within the job search period and has not accepted any other job within the Bank, the employee will be terminated *with* severance benefits. Additionally, the employee is offered the services of an outplacement firm. |
| ERISA INFORMATION: | **Policy Administration** Severance benefits under this Policy are administered by the Benefits Administration Committee ("Administrator"); |
| | \*     \*     \* |

> The Administrator shall have the discretionary authority to carry out all actions necessary for the administration of the Policy with respect to Severance benefits. The Administrator shall have power and discretion to construe any disputed or ambiguous terms, determine all questions relating to the administration of the Policy including eligibility for Severance benefits and the amounts payable, and the authority to review and resolve all claims for Severance benefits. All decisions by the Administrator shall be final and binding on all employees and their beneficiaries. The Administrator shall have the authority to delegate to others, including Bank employees, certain aspects of the administration of the Policy.

(The Plan at 1, 3, 4, 5, 9, 10).

The Benefits Administration Committee is made up of seven individuals, each of whom is an employee of Harris N.A. Six of those individuals make up the Benefits Appeals Committee. The Benefits Administration Committee meets four times per year. When a decision on a claim for benefits must be made between meetings of the Benefits Administration Committee, the Benefits Appeals Committee is authorized to act on the claim.

Plaintiff Mathie had worked for Harris N.A. from 1981 until her employment was terminated in 2006.

On or about May 6, 2007, plaintiff Mathie wrote to the Administrator to make a claim for severance benefits. In her claim, plaintiff stated that her job had been eliminated in February 2005, that she was not given an opportunity to search for a new position, that, instead, she was put in a position that required the use of SAS (a computer program she claimed not to be familiar with), and that because she was unable to use the program, she was terminated from her employment in March 2006. When plaintiff did not receive a response within 90 days, she filed an appeal on or about September 6, 2007.

The Administrator denied plaintiff's claim and appeal. On or about November 9, 2007, the Administrator sent Mathie's attorney a letter which stated, in relevant part:

For the reasons set forth below, Harris Benefits Appeals Committee (the "Committee") has determined that Ms. Mathie's severance pay claim under the Employment Transition Policy (the "Policy") must be denied.

**Facts**

In reaching this decision, the Committee has considered the information provided by you and Ms. Mathie, information available internally and the provisions of the Policy. The information considered included Ms. Mathie's letter dated May 6, 2007, your prior correspondence dated November 2, 2006, and February 8, 2007, and the enclosures thereto, and information obtained in connection with an internal review of personnel records and the interview of knowledgeable staff members.

The information indicates, and the Committee finds, the following facts to be true:

The Bank hired Ms. Mathie on January 26, 1981. On June 1, 2001, she was promoted to a Grade 13 Marketing Analyst in the Marketing Information Decision Support area and remained in this position until her termination on March 7, 2006.

In February 2005, Ms. Mathie began reporting to a different manager, Jill Huletz. This management change, however, did not result in the elimination of her position. Ms. Mathie simply started spending more time completing ad hoc analysis, a job function that she had always performed.

Long before February 2005, Ms. Mathie's managers expressed concern about her performance. Ms. Mathie's performance problems continued after February 2005 and ultimately resulted in her termination over one year later on March 7, 2006. Following Ms. Mathie's termiantion, the Bank posted the marketing Analyst position. In August 2006, the Bank hired a candidate to fill the position with the same job title, grade, code and substantially similar duties and responsibilities.

**Analysis**

The Employment Transition Policy limits entitlement to severance pay "to those eligible employees whose employment ends due to organizational change." (Policy at 3.) Because Ms. Mathie's employment did not end due to an organizational change, she is not entitled to severance pay. Ms. Mathie's position was not eliminated. She simply started spending more time completing a certain job function that she had always performed. Her job description, which details the ad hoc analysis responsibilities, had been in effect and unchanged since 1999.

> Further, Ms. Mathie's 2004 performance review clearly indicates that she had ad hoc analysis responsibilities. Finally, her own record of hours worked in 2004 and 2005 demonstrates that ad hoc analysis had been among her job responsibilities all along.
>
> Further, even if Ms. Mathie's position had been eliminated, she still would not be entitled to severance pay because she continued her employment at the Bank. The Policy specifically provides that, if an employee's position is eliminated, no severance benefits will be paid if the employee either (a) has been offered but rejects a comparable job or (b) accepts "any other job within the Bank." (Policy at 5.) Similarly, the Employee's Guide to Employment Transition states that employees are "***not*** eligible for severance benefits" if they "accept another job within the BMO U.S. Groups of Companies." (Guide at 10.) Thus, by continuing her employment after her job allegedly was eliminated, Ms. Mathie effectively accepted the new position (which happened to be at the same location, in the same department, on the same shift, and at the same pay grade and salary). For this reason also, she is not entitled to severance pay and the Committee must deny Ms. Mathie's appeal.

(Committee Decision).

Plaintiff has put forth undisputed evidence that in February 2005, she was assigned to a new manager. The change did not affect plaintiff's rate of pay, her title or the building in which she worked. Her duties before and after February 2005, however, were not identical. For example, in 2004, plaintiff spent the majority of her time at work cleaning up, householding, mapping and querying data. The types of software she used most often were SNL, SQL and Trillium. (Nothing in the record explains the software's functions.) In 2005, plaintiff spent less time cleaning up data.

The record also reflects that plaintiff's performance ratings declined when she had a new manager. On her performance reviews for the periods ending September 30, 2003 and September 30, 2004, plaintiff was rated as passing. By December 2005, plaintiff was placed on probation due to her performance.

After her termination in March 2006, plaintiff sought severance benefits under the Plan. When the Plan denied her request and appeal, plaintiff brought suit here.

## II. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

ERISA § 502 provides a cause of action for participants and beneficiaries of ERISA plans "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). A district court reviews a "denial of benefits challenged under § 1132(a)(1)(B) . . . under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Plan at issue in this case includes the discretionary language. Specifically, the Plan provides, in relevant part:

> The Administrator shall have the discretionary authority to carry out all actions necessary for the administration of the Policy with respect to Severance benefits. The Administrator shall have the power and discretion to construe any disputed or

ambiguous terms, determine all questions relating to the administration of the
Policy including eligibility for Severance benefits and the amounts payable, and
the authority to review and resolve all claims for Severance benefits. All
decisions by the Administrator shall be final and binding on all employees and
their beneficiaries.

(Plan at 10). Although no magic words are required, this language is sufficient to confer discretionary authority and trigger the arbitrary and capricious standard of review with respect to eligibility determinations and interpretations of the Plan. *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1019-1020 (7th Cir. 1998).

Notwithstanding this language, plaintiff argues that the Court should review the decision *de novo*. Plaintiff argues that while the Plan gives discretionary authority to the Administrator, it does not give discretionary authority to the Benefits Appeals Committee, which actually made the decision on plaintiff's claim for benefits. The Court disagrees. The Plan specifically names the Benefits Administration Committee as Administrator. (The Plan at 9) ("Severance benefits under this Policy are administered by the Benefits Administration Committee ('Administrator')."). The Benefits Administration Committee, in turn, is empowered to delegate its functions. (The Plan at 10) ("The Administrator shall have the authority to delegate to others, including Bank employees, certain aspects of the administration of the Policy."). Such delegation is authorized under ERISA. *See* 29 U.S.C. § 1105(c)(1). The Benefits Appeals Committee (which, coincidentally, is made up of six of the seven members of the Benefits Administration Committee) was authorized to make the decision, and the Court will review the decision under the arbitrary and capricious standard.

Ultimately, it matters not whether the Court reviews the decision *de novo* or applies the arbitrary and capricious standard, because the outcome would be the same either way.

Under the arbitrary and capricious standard, review is not a rubber stamp, but the administrator's decision will be upset only if it is "downright unreasonable." *Williams v. Aetna Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007). The Court "will uphold the Plan's determination 'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Williams*, 509 F.3d at 321-322 (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)).

Here, the Court concludes that the Benefits Appeals Committee considered the relevant factors, made reasonable interpretations of the Plan language and reached a reasonable conclusion.

The Benefits Appeals Committee first determined that Mathie was not entitled to severance benefits when she started reporting to a new manager in February 2005, because her job had not been eliminated. This was a reasonable interpretation of the Plan, which says that severance benefits are to be paid to eligible employees whose "employment ends due to organizational change." The Plan defines organizational change as "physical relocation or elimination of a position." The Benefits Appeals Committee noted that although Mathie started reporting to a new manager, her title and salary did not change. The Benefits Appeals Committee also noted that Mathie continued to perform the same duties even though the amount of time she spent on particular duties changed. Plaintiff argues that the Benefits Appeals Committee erred in concluding that her job was not eliminated, because when she changed managers, she spent less time cleaning up data. It was not unreasonable for the Benefits Appeals

Committee to conclude that altering the amount of time devoted to the various duties did not constitute the elimination of a position. The Benefits Appeals Committee's conclusion that plaintiff's position had not been eliminated was reasonable.

The Benefits Appeals Committee also concluded that even if, as plaintiff argued, plaintiff's position had been eliminated, she was still not entitled to severance because she had, in effect, taken another position with the new manager. This, too, was a reasonable interpretation of the Plan, which specifically stated that "[if] an employee accepts another job within the Bank during the job search period, the employee will ***not*** be eligible for severance benefits." The decision was also a reasonable interpretation of the facts because it is undisputed that Mathie continued to work for the bank for her new manager for over a year before her discharge. Mathie argues that changing managers should not count as accepting a new position because she was not given twelve weeks to locate a new position. This comes as no surprise given that Harris had not intended to eliminate Mathie's position. It merely assigned her a new manager. Even if that management change constituted an elimination of Mathie's prior position, Mathie did not need twelve weeks to look for a new position, because the bank handed her the new position. Under the Plan, employees are not entitled to severance if they continue to be employed by Harris, and Mathie continued to work for Harris after February 2005, the date she argues that her position was eliminated. The Benefits Appeals Committee's decision was reasonable.

For these reasons, the Court concludes that the decision to deny Mathie's claim for benefits was not arbitrary or capricious. The defendant is entitled to judgment as a matter of law, and the Court hereby grants defendant's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: January 26, 2009